COLUMBUS CANNING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9582.    Promulgated February 29, 1928.

*Maurice Weinstein, Esq.*, for the petitioner.
*J. LeRoy Deveney, Esq.*, for the respondent.

OPINION.

PHILLIPS: The petition alleges two errors. One was abandoned at the hearing, leaving for consideration only the question whether the Commissioner erred when he included in invested capital for 1920 only the amounts paid to petitioner on account of the notes given by certain of its employees for stock and in refusing to include in invested capital for that year the face amount of such notes.

Section 326 of the Revenue Act of 1918 provides that invested capital means, among other things, "(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment * * *." The primary purpose of the issue of stock to employees was to give them an interest in the business, and while it appears that all parties expected that payment of the notes should be made largely, if not exclusively, from dividends, the obligation to pay was unconditional and the *bona fides* of the transaction seems beyond question. In such circumstances the actual cash value of the notes may be included in invested capital unless, by reason of some provision of the Wisconsin statutes, the transaction is void. *Bowers* v. *Kaufman*, 18 Fed. (2d) 69; 5 Am. Fed. Tax. Rep. 5909; *American Steel Co.*, 1 B. T. A. 839; *Cross Mountain Coal Co.*, 2 B. T. A. 587; *Stamey-Mackey Construction Co.*, 4 B. T. A. 383. The Wisconsin courts have indicated that notes given in such a transaction are enforceable. *Whitewater Tile & Pressed Brick Co.* v. *Baker*, 142 Wis. 420; 125 N. W. 984; *Knutson Hardware Co.*, 5 B. T. A. 9.

To establish the value of the notes, petitioner relies largely upon the testimony of bankers that they would have discounted them. Upon further examination it appeared that this testimony was based largely upon the value which would be given the notes by the endorsement of the petitioner. Such testimony is of little or no value; it expresses only the borrowing capacity of petitioner and not the value of the notes when paid in. The thing that is to be included in invested capital is the actual cash value of the notes given to the petitioner; not the amount which it could realize thereon when backed by its own credit. Any other decision would permit the cor-

poration to include its borrowing capacity in its invested capital, despite the provisions of the statute excluding borrowed capital.

In considering the value of the notes we must also exclude the value of the stock purchased with the notes and pledged as security for their payment. It would seem evident that a corporation does not increase the value of its assets or increase its invested capital by increasing its capital stock. Until it receives property of value in exchange for such stock, its assets remain the same. If the corporation issues its stock for notes which in themselves have no value, there is still no increase in the value of the assets. Such value is not increased by pledging the stock so issued as security for the payment of the notes, for the only thing of value which it has received for its stock is such stock. If it does not increase its assets by issuing its own stock to itself, it does not do so when it receives such stock as the only thing of value in payment therefor. The notes can be paid only out of such security and the value of such security can be realized only from the assets already existing. The net worth of the corporation is the same as it was before the transaction took place. Only the amount of the outstanding capital stock has been increased and the effect is the same as that of a stock dividend; it serves to decrease the value of each share but not to increase the value of the assets.

It is said that the corporation could borrow on such collateral notes. The answer is that it is not borrowing on any value existing in the notes but is borrowing on its own stock. This is only another way of saying that it is borrowing on its own credit, as reflected in the credit value attaching to its stock. To permit the value of the stock so sold and pledged as security for the notes to be used to measure the value of the notes, would be to include in invested capital the value of the assets back of the stock, which have already been once included to the full amount allowed by the statute.

The argument proceeds in a closed circle and would permit the duplication of the same values in invested capital. Carried to its logical conclusion, the contention made would permit the same values to be included several times, in whole or in part, by reason of successive increases of outstanding capital stock and the pledging thereof as collateral for notes. Invested capital means something more substantial than this.

In the instant case the notes were not wholly valueless. While most of the testimony related to the amount which could have been obtained for the notes and their collateral or upon the notes when endorsed by the corporation, there is some testimony of the financial responsibility of the makers and it is upon this that we base our finding that at the time these notes were paid in for stock they had a

cash value of $10,000. To this extent the cash value of the assets of the petitioner were increased, and such value should be included in the invested capital from March 19, 1920.

Reviewed by the Board.

> *Decision will be entered on 20 days' notice, under Rule 50.*

MURDOCK concurs in the result.